UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDY LUU TRAN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | )    CIVIL ACTION |
| | )    NO. 23-40128-WGY |
| CITIZENS BANK N.A. F/K/A | ) |
| RBS CITIZENS, N.A., and | ) |
| HERBERT JACOBS, | ) |
| | ) |
| Defendant-Appellees. | ) |
| | ) |
| | ) |

YOUNG, D.J.                                              January 23, 2024

**MEMORANDUM & ORDER**

## I.  INTRODUCTION

This case comes before this Court as an appeal from a
bankruptcy court order and judgment.  The appellant, Andy Luu
Tran ("Tran"), asks this Court to reverse the Bankruptcy Court's
decision, while the appellee, Herbert Jacobs ("Jacobs"),
requests the Court affirm the same.

Tran granted Citizens Bank N.A. f/k/a RBS Citizens, N.A.
("Citizens Bank") a mortgage on his property.  Citizens Bank
foreclosed on the property and sold it to Jacobs who was the
highest bidder at the foreclosure auction sale.  Citizens Bank
and Jacobs executed a memorandum of sale.  Subsequently, and

prepetition, an Affidavit of Sale and a foreclosure deed, the latter of which Tran alleges is defective, were recorded.  When asked to vacate the property, Tran filed for bankruptcy and initiated an adversary bankruptcy proceeding, contending that he still retained the equity of redemption over the mortgaged property, and could avoid the transfer of his equity of redemption because the foreclosure deed's defects rendered the transfer void as incompliant with the Commonwealth's applicable notice requirements.

Having reviewed the entire record, including the bankruptcy court docket, see Bankruptcy Docket, ECF No. 2 ("Bankruptcy Docket"), this Court holds that Tran's equity of redemption extinguished at the conclusion of the foreclosure auction sale upon the execution of a memorandum of sale between Citizens Bank and Jacobs.  This Court also holds that the Affidavit of Sale relating to the auction sale that was properly recorded provided constructive notice to third parties such that Tran is unable to avoid the transfer and the extinguishment of his equity of redemption.  Accordingly, and for the reasons stated below, this Court affirms the Bankruptcy Court's decision.

## II.  PROCEDURAL HISTORY

On September 13, 2022, Tran filed for Chapter 13 bankruptcy.  Statement of Material Facts ¶ 6, Bankruptcy Docket

No. 33 ("Material Facts").[1]  On September 14, 2022, Tran filed a complaint in the Bankruptcy Court, seeking to recover his real property located at 47 Clinton Street, Framingham, Massachusetts (the "Property"), which was subject to a mortgage encumbering title to the Property, with Tran as the mortgagor and Citizens Bank as the mortgagee.  See Compl. to Avoid Unperfected Pre-Petition Transfer, Bankruptcy Docket No. 1 ("Compl.").

After both Citizens Bank and Jacobs responded to the Complaint, Tran moved for judgment on the pleadings, which the Bankruptcy Court, following a hearing and with the assent of all parties, converted into a motion for summary judgment.  See Order 1, Bankruptcy Docket No. 38 ("Bankruptcy Court Decision"). The parties were given an opportunity to provide supplemental pleadings, which they did, and Citizens Bank and Jacobs moved for summary judgment in their favor.  Id. at 1-2.

On August 7, 2023, the Bankruptcy Court granted summary judgment in favor of Citizens Bank and Jacobs and against Tran. Id. at 2.  In reaching that conclusion, the Bankruptcy Court held that Tran was unable to avoid the prepetition transfer of the Property because his equity of redemption over the Property had extinguished when the foreclosure auction concluded with the

---

[1] As noted in the Bankruptcy Court Decision, the Statement of Material Facts state "uncontested facts" on which the Bankruptcy Judge, among other submissions, relied in his decision.  See Bankruptcy Court Decision 2.

execution of a memorandum of sale.  Id. at 4.  The Bankruptcy
Court held further that the delivery of a deed was not required
to "complete[]" the foreclosure sale and that the execution of a
memorandum of sale was sufficient to complete foreclosure and
thus extinguish Tran's equity of redemption as mortgagor.  Id.
Finally, while acknowledging that the foreclosure deed was
incomplete, as it lacked proper notarization, id. at 5
(referring to "the incomplete foreclosure deed"), the Bankruptcy
Court nonetheless held that it did not need to reach the issue
of whether an incomplete deed gave rise to the necessary
constructive notice to third parties to effectuate the transfer
of the equity of redemption, id. at 5-6.  The Bankruptcy Court
also held that the recordation of the Affidavit of Sale provided
constructive notice to a hypothetical bona fide purchaser.  Id.
at 5-6.  For these reasons, the Bankruptcy Court concluded that
the equity of redemption on the Property, once belonging to Tran
as the mortgagor, had been lawfully extinguished.  Id. at 6.
Subsequently, on August 29, 2023, the Bankruptcy Court denied
Tran's motion for relief from judgment.  See Order on Mot. for
Relief from J., Bankruptcy Docket No. 44.

Tran then filed this appeal, contending that his equity of
redemption extinguished, not upon the execution of a memorandum
of sale at the close of the foreclosure auction, but at the time
of the transfer of the deed, which in this case was defective

and therefore incapable of extinguishing said equity of redemption.  See Opening Br. of Appellant ("Appellant's Br."), ECF No. 7.  The parties properly briefed the issue.  See Opening Br. of Appellee ("Appellee's Br."), ECF. No. 8; Reply Br. for Appellant ("Appellant's Reply"), ECF No. 9; Surreply of Appellee ("Appellee's Surreply"), ECF No. 13; Reply to Mot. Leave to File Surreply ("Appellant's Surreply"), ECF. No. 11; Herbert Jacobs' Resp. to Debtors' Citation of Suppl. Authority ("Appellee's Resp. Suppl. Authority"), ECF No. 14.

The Court has carefully reviewed the entire record pertaining to this case as well as the orders and judgments entered by the Bankruptcy Court before preparing this opinion.

## III. FACTS ALLEGED

The material facts in this case are uncontested. Bankruptcy Court Decision 2.  On May 27, 2008, Tran granted a mortgage on the Property to Citizens Bank.  Material Facts ¶ 1. Citizens Bank foreclosed on the mortgage and on August 16, 2022, Jacobs purchased the property at a foreclosure auction.  Id. ¶ 2.  On the same day, Citizens Bank and Jacobs signed a memorandum of sale in connection with the purchase.  Id. ¶ 3. On August 22, 2022, a foreclosure deed regarding the purchase was signed.  Id. ¶ 4.  The deed and an Affidavit of Sale relating to the sale and purchase was recorded on September 8, 2022.  Appellant's Br. 2; Appellee's Br. 5.  Days later, on

September 12, 2022, Jacobs served Tran a notice to vacate the Property.  Appellee's Br. 5.  Tran then filed for Chapter 13 bankruptcy on September 13, 2022, and a day later, on September 14, 2022, an adversary proceeding was initiated in the Bankruptcy Court, which has given rise to the present appeal. Id.; see also Compl.; Appellant's Br. 2.

Crucially, Tran takes issue with the foreclosure deed relating to the sale and purchase of the Property by Citizens Bank and Jacobs, signed on August 22, 2022, and recorded on September 8, 2022.  To be sure, Tran agrees that the deed was recorded prior to Tran's Chapter 13 petition, and therefore prepetition.  Appellant's Br. 2 ("Pre-petition, a foreclosure deed was recorded . . . .").  He argues, however, that the deed was defective and therefore unable to put third parties on constructive notice of the Property's conveyance to Jacobs.  To that end, Tran makes three specific arguments.

First, Tran contends that the deed was deficient because it was not notarized, rendering it incompliant with applicable laws of the Commonwealth.  Id. at 2 (mentioning the lack of a "notarized deed" (emphasis in original) and that "[t]he deed that was recorded was missing a notarization altogether"); id. at 4 (arguing that the deed has a "latent defect"); see also Appellant's Reply 2 (arguing that the "deed is void and was 'improvidently recorded'"); Compl. ¶ 10 (arguing that the deed

"as recorded lacks an acknowledgment as required" by the laws of Commonwealth and therefore "was 'improvidently' recorded, and is no effect as a transfer of title").

Second, Tran argues that the deed, because it was "improvidently recorded," does not provide constructive notice to third parties of the extinguishment of his equity of redemption, and therefore, that he retains the equity of redemption over the Property. See, e.g., Appellant's Br. 4 (arguing that the lack of notarization "prevents the deed from giving constructive notice to anyone"); id. at 5 (contending that "the deed was improvidently recorded and does not give constructive notice"); Appellant's Reply 2 (contending that "the equity of redemption was not extinguished" (emphasis in original)); Appellant's Surreply 2 (asking this Court to remand the Bankruptcy Court Decision "for entry of judgment in Tran's favor, avoiding the transfer of Mr. Tran's equity of redemption").

Third, Tran argues that the Affidavit of Sale, attesting to the sale and purchase of the Property by Citizens Bank and Jacobs, signed on August 22, 2022, and recorded on September 8, 2022, cannot be substituted for a properly executed and recorded deed, and therefore cannot be regarded as having given constructive notice to third parties of the sale that would extinguish his equity of redemption on the Property.

[7]

Appellant's Br. 2 ("There was only an Affidavit of Sale, which
is not the same thing [as a notarized deed.]"); id. at 5
(arguing that the "Affidavit of Sale does not cure the latent
defect" and that "the deed was improvidently recorded and does
not give constructive notice"); Appellant's Reply 2 (arguing
that "an 'affidavit' is not a 'deed'"); id. ("Whether the
affidavit was 'properly recorded' is irrelevant."); id. ("All
that the affidavit gives notice of is that the equity of
redemption was sold, not that the property was conveyed.").

In response, Jacobs contends that "there is no need to
reach [the] issue" of whether the deed was defective and void.
Appellee's Surreply 3 n.1.  This, Jacobs argues, is because the
execution and recording of a deed is not necessary to extinguish
Tran's equity of redemption; said equity extinguishes, Jacobs
contends, as of the moment of the foreclosure auction sale's
conclusion, of which third parties were put on constructive
notice via the proper execution and recording of the Affidavit
of Sale relating to the foreclosure sale.  Appellee's Br. 8
(arguing that "[t]he [e]quity [o]f [r]edemption [w]as
[e]xtinguished [a]t [t]he [f]oreclosure [a]uction"); id. at 10
(arguing that "[t]he [a]ffidavit [o]f [s]ale [p]rovides
[c]onstructive [n]otice [o]f [t]he [f]oreclosure [s]ale"); see
also Appellee's Surreply 3 n.1 (approvingly citing the
Bankruptcy Court Decision's holding that "the Affidavit of Sale

that was recorded did provide constructive notice" (quoting Bankruptcy Court Decision 5-6)).

## IV. ANALYSIS

Tran asks this Court to review and reverse the Bankruptcy Court Decision as "a manifest error of law." Appellant Br. 7. In essence, the parties' contentions require this Court to determine the precise moment at which a mortgagor's -- here, Tran's -- equity of redemption over a mortgaged property legally extinguishes.

First, Tran asks the Court to reverse the Bankruptcy Court's holding that his equity of redemption extinguished at the conclusion of the foreclosure auction and not when the deed was recorded. See Bankruptcy Court Decision 4 ("It is settled law that, when a foreclosure auction concludes with an accepted bid and the execution of a memorandum of sale, a mortgagor's equity of redemption is extinguished."); id. ("A foreclosure sale is not 'completed' by delivery of the deed . . . ."). Jacobs contends that Tran's equity of redemption extinguished when the foreclosure auction was concluded. See Appellee's Br. 2.

Second, Tran asks the Court to reverse the Bankruptcy Court's holding that the execution and recording of the Affidavit of Sale put third parties on constructive notice of the conclusion of the foreclosure auction, thus extinguishing

Tran's equity of redemption.  See Bankruptcy Court Decision 5-6 (holding that "the Affidavit of Sale that was recorded did provide constructive notice . . . and as such, a trustee could not avoid the transfer (extinguishment) of [Tran's] equity of redemption over the Property" (footnote omitted)).

All parties agree that the central issues here are properly categorized as issues of law.  Appellant's Br. 1; Appellee's Br. 4.

As articulated in greater detail below, this Court agrees with the Bankruptcy Court, and, therefore, rejects this appeal.

### A.    Standard of Review

This Court reviews a bankruptcy court's conclusions of law de novo, and its findings of fact subject to a "clearly erroneous" standard.  See Sharfarz v. Goguen, 691 F.3d 62, 68 (1st Cir. 2012); Stoehr v. Mohamed, 244 F.3d 206, 207-08 (1st Cir. 2001).  A bankruptcy court's entry of summary judgment, as is the case here, warrants de novo review.  See Sharfarz, 691 F.3d at 68; Autism Intervention Specialists, LLC v. Aoude, 654 B.R. 41, 46 (D. Mass. 2023).

Since the issues presented on appeal in this case are matters of law, this Court will exercise de novo review.  Cf. DeNadai v. Preferred Cap. Mkts., 272 B.R. 21, 27 (D. Mass. 2001) ("The parties agree that there is no dispute as to a material

fact and that the present appeal presents only legal issues subject to de novo review.").

**B.     The Bankruptcy Court Correctly Held that the Equity of Redemption Extinguishes Upon Execution of a Memorandum of Sale.**

**1.     Generally**

The crux of the legal issue presented in this appeal is when in time a mortgagor's equity of redemption extinguishes. Tran argues that said equity does not extinguish at the conclusion of a foreclosure auction, but rather when the highest bidder at the auction pays the consideration "and the deed is delivered, and not before."  Appellant's Reply 2 (emphasis in original).  Jacobs contends that the equity of redemption extinguishes at the conclusion of the foreclosure auction, of which third parties were put on constructive notice via a signed and recorded Affidavit of Sale, and not when the deed is delivered.  See Appellee's Br. 8-9.  The Bankruptcy Court Decision sides with Jacobs, holding that "[i]t is settled law that, when a foreclosure auction concludes with an accepted bid and the execution of a memorandum of sale, a mortgagor's equity of redemption is extinguished."  Bankruptcy Court Decision 4. For the reasons explained below, this Court agrees with the Bankruptcy Court.

The Commonwealth subscribes to the so-called "title theory" of mortgage law.  See, e.g., United States Bank Nat'l Ass'n v.

Ibanez, 458 Mass. 637, 649 (2011) ("In a 'title theory state' like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt."); Lemelson v. United States Bank Nat'l Ass'n, 721 F.3d 18, 23 (1st Cir. 2013) ("It is beyond dispute that Massachusetts subscribes to the 'title theory' of mortgage law."); Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 292 (1st Cir. 2013) (describing the Commonwealth as "a title theory state").  In the Commonwealth, therefore, the grant of a mortgage transfers legal title to the mortgaged property from the mortgagor to the mortgagee, but the equity of redemption, that is, the mortgagor's right to recover property prior to a foreclosure, is not subject to transfer by the mere grant of a mortgage.  Bevilacqua v. Rodriguez, 460 Mass. 762, 774 (2011) ("In Massachusetts, a 'mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains.'" (quoting Maglione v. BancBoston Mtge. Corp., 29 Mass. App. Ct. 88, 90 (1990)); see also Lemelson, 721 F.3d at 27.  Rather, the mortgagor retains the equity of redemption until and unless the mortgagee forecloses on the mortgaged property.  At issue here is the precise timing of such foreclosure that extinguishes a mortgagor's equity of redemption.

The relevant provision before the Court is the concluding clause of Massachusetts General Laws, chapter 244, section 18,

which provides that the equity of redemption continues "unless
the land has been <u>sold</u> pursuant to a power of sale contained in
the mortgage deed."  Mass. Gen. Laws ch. 244, § 18 (emphasis
added).  The parties disagree as to the exact moment at which
the foreclosure sale mentioned in the provision occurs.

   **2.   <u>Beal</u> is Not Applicable to the Present Appeal**

   Both parties cite to caselaw to support their respective
contentions as to timing.  Tran essentially cites to <u>Beal</u> v.
<u>Attleborough Savings Bank</u>, 248 Mass. 342 (1924), a decision by
the Commonwealth's Supreme Judicial Court, to assert that a
foreclosure auction's conclusion and the execution of a sale and
purchase agreement do not suffice to extinguish the equity of
redemption, and that the proper transfer of a deed is required.
<u>See</u> Appellant's Reply 2.  In <u>Beal</u>, the Supreme Judicial Court
held that the mortgagor retained the equity of redemption after
the auction sale and until the delivery of the deed to the
purchaser.  248 Mass. at 343 ("The auction sale was in effect a
mere contract of sale. The sale was not executed until the deed
was delivered, when the title passed to the purchaser."); <u>id.</u> at
345 ("Up to that time [i.e., delivery of the deed], the
plaintiff had an equity of redemption . . . .").

   Jacobs, on the other hand, mainly cites to <u>Outpost Cafe,
Inc.</u> v. <u>Fairhaven Savings Bank</u>, 3 Mass. App. Ct. 1 (1975), which
is a decision by the Massachusetts Appeals Court.  <u>See</u>

[13]

Appellee's Br. 8-10. Outpost Cafe held that "'foreclosure is complete' at the time of the auction sale[,]" 3 Mass. App. Ct. at 5 (quoting Way v. Mullett, 143 Mass. 49, 53 (1886)), and that the right of redemption is therefore barred from the moment of the conclusion of the auction sale, id. at 7 ("[P]laintiff's equity of redemption was barred . . . at least as early as the point in time when the memorandum of sale was executed with the purchaser at the foreclosure sale.").

Tran, recognizing a possible tension between these two cases, in that Outpost Cafe "call[s] Beal into question" on the question of the timing of extinguishment, Appellant's Reply 2 n.2, asserts that Beal, as a ruling by the highest state court in the Commonwealth, to wit, the "Supreme Judicia[l] Court[]," "effectively overrules Outpost [Cafe], at least in part," id. In response, Jacobs contends that Beal, decided in 1924, could not have overruled Outpost Cafe, decided in 1975, because Beal predated Outpost Cafe by 51 years. Appellee's Surreply 2.

Subsequently, Tran acknowledged that overruling was an "infelicitous choice of words," Appellant's Surreply 1, but he still argues that Beal, although earlier in time, by virtue of being the decision of the Supreme Judicial Court, ought control to the extent it conflicts with the decision in Outpost Cafe, a decision by the Massachusetts Appeals Court, id. Tran further argues that so long as the Supreme Judicial Court did not

overrule its own precedent, Beal remains good law, and that the Appeals Court cannot "discredit" a decision by the Supreme Judicial Court.  Id.

The Supreme Judicial Court is the "final arbiter" of the laws of the Commonwealth.  Genereux v. Raytheon Co., 754 F.3d 51, 57 (1st Cir. 2014); see also Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010) ("[The Supreme Judicial Court] is the highest appellate authority in the Commonwealth, and our decisions on all questions of law are conclusive on all Massachusetts trial courts and the Appeals Court.").  Consequently, and further, the Commonwealth's Appeals Court, in its own words, is "bound to follow the decisions of the Supreme Judicial Court."  Commonwealth v. Colon, 52 Mass. App. Ct. 725, 730 n.1 (2001).  Therefore, until and unless overruled by the Supreme Judicial Court, Beal cannot be overruled by Outpost Cafe, a decision by an intermediate appellate court of the Commonwealth.  The Supreme Judicial Court has not overruled Beal, and conversely, has approvingly cited it as recently as 2001.  See Kelley v. Neilson, 433 Mass. 706, 714 n.16 (2001); see also Appellant's Surreply 1 (mentioning Kelley's reference to Beal).  Thus, Beal remains in force.

That Beal remains in force, however, is not to suggest, as Tran does, that it is controlling in the present case.  To be sure, Beal does include language suggesting that the equity of

redemption would not be extinguished by the close of an auction
sale but rather would be retained by the mortgagor until
conveyance.  See Beal, 248 Mass. at 343, 345.  Subsequent cases
by the Supreme Judicial Court, however, have distinguished that
language in Beal.  Most notably, and as Jacobs also points out,
Appellee's Surreply 2, the Supreme Judicial Court clarified a
few years after Beal, in a decision written by the Justice who
had written the Beal opinion, that "[Beal] is not an authority
for the contention that the right to redeem continues until the
conveyance is made."  White v. Macarelli, 267 Mass. 596, 599
(1929).  White thus states that Beal cannot be cited as
authority for the contention that the equity of redemption
extinguishes not at the conclusion of a foreclosure auction sale
but when conveyance takes place via the transfer and recording
of a duly executed deed.  Id.

     In addition, while Tran correctly observes that Beal has
been continuously and approvingly cited by courts, including the
Supreme Judicial Court, citations to Beal following White have
followed White's clarification that Beal ought not be cited for
the contention that the equity of redemption survives an auction
sale and until conveyance.  See, e.g., Kelley, 433 Mass. at 714
n.16; Laurin v. De Carolis Constr. Co., 372 Mass. 688, 691
(1977); Kattor v. Adams, 323 Mass. 686, 689 (1949).  These
subsequent citations to Beal have recruited that case in aid of

[16]

the proposition that the mortgagor is entitled to rents and profits received by the mortgagee during the time intervening between the auction sale and the delivery of the deed to the purchaser, which has no bearing on the equity of redemption and the precise time at which it extinguishes.  See, e.g., Kelley, 433 Mass. at 714 n.16; Laurin, 372 Mass. at 691; Kattor, 323 Mass. at 689.

For the foregoing reasons, Tran cannot rely on Beal to argue that the equity of redemption over the Property did not extinguish when the memorandum of sale was executed at the conclusion of the foreclosure auction.

### 3.   Other Cases Establish That the Equity of Redemption Extinguishes When a Memorandum of Sale is Executed

Having established Beal's inapplicability to the present dispute concerning the precise time at which the equity of redemption extinguishes, this Court now proceeds to survey other cases that provide guidance.  Caselaw from both this District and the Commonwealth amply demonstrates that the equity of redemption is extinguished at the conclusion of a foreclosure auction sale as of the moment a memorandum of sale is executed.

The Court begins with a survey of how the timing question has been treated by the courts of the Commonwealth.  In Outpost Cafe, upon which Jacobs repeatedly relies, see, e.g., Appellee's Br. 8-10, the Commonwealth's Appeals Court held that "the

[17]

plaintiff's equity of redemption was barred . . . at least as early as the point in time when the memorandum of sale was executed with the purchaser at the foreclosure sale."  3 Mass. App. Ct. at 7.  Subsequent decisions by the Appeals Court have continued to follow Outpost Cafe's holding.  See, e.g., Boston Redevelopment Auth. v. Boston Priv. Bank & Tr. Co., 2020 Mass. App. Unpub. LEXIS 746, at *2-3 (Mass. App. Ct. Aug. 6, 2020) ("Many of the rights of the mortgagor, such as the right of redemption, terminate upon execution of the memorandum of sale."); Guempel v. Great Am. Ins. Co., 11 Mass. App. Ct. 845, 849 (1981).  One decision, tellingly, held that Outpost Cafe's holding that the equity of redemption extinguishes upon the execution of a memorandum of sale is "well-settled."  Housman v. LBM Fin., LLC, 80 Mass. App. Ct. 213, 220 (2011) ("It is well-settled that the power of sale is exercised at the time of the actual sale and terminates the owner's equity of redemption.").

More importantly, the Supreme Judicial Court has agreed with the Commonwealth's Appeals Court on this point. Approvingly citing Outpost Cafe, the Supreme Judicial Court held that "[t]he execution of the memorandum of sale terminated the plaintiffs' equity of redemption." Williams v. Resolution GGF Oy, 417 Mass. 377, 384 (1994).  As such, the interpretation by the Commonwealth's intermediate appellate court that a mortgagor's equity of redemption extinguishes as of the moment a

[18]

memorandum of sale is executed at an auction sale has been affirmed by the highest court in the Commonwealth.[2]  That the Supreme Judicial Court has agreed with <u>Outpost Cafe</u>'s holding in <u>Williams</u> renders unmeritorious Tran's contention that <u>Outpost Cafe</u> is an "outlier."  Appellant's Surreply 2.  On the contrary, <u>Outpost Cafe</u>, as approvingly cited by the Supreme Judicial Court in <u>Williams</u>, provides the controlling statement as to when a mortgagor's equity of redemption extinguishes in the Commonwealth -- and the statement is that such equity extinguishes "when the memorandum of sale was executed with the purchaser at the foreclosure sale."  <u>Outpost Cafe</u>, 3 Mass. App. Ct. at 7.

This Court now proceeds to survey caselaw from the district in which it sits.  The bankruptcy courts in this district that have been called upon to confront this issue of timing have, not surprisingly, followed the courts of the Commonwealth.  As early as 1997, merely three years after the Supreme Judicial Court

---

[2] <u>Williams</u>, which affirmed <u>Outpost Cafe</u>'s interpretation, was decided in 1994.  In 2005, a bankruptcy court confronting the same question of when does the equity of redemption extinguish observed that "were the Supreme Judicial Court confronted with the issue of when is a property, or rather the equity of redemption, sold at a foreclosure sale, it would conclude that the sale occurs when the memorandum of sale is signed."  <u>In re Crichlow</u>, 322 B.R. 229, 238 (Bankr. D. Mass. 2005) (Hillman, J.).  Through <u>Williams</u>, the Supreme Judicial Court has indeed had the opportunity to provide its interpretation on this issue.

expressed agreement with Outpost Cafe's holding in Williams, a
bankruptcy court noted that "[i]t is well-settled
under Massachusetts law that where a foreclosure sale is
properly conducted, the redemption rights of a mortgagor
terminate as early as the execution of the memorandum of sale."
In re Theoclis, 213 B.R. 880, 882 (Bankr. D. Mass. 1997)
(Boroff, J.).  Subsequent bankruptcy court decisions from this
district have expressed agreement.  See, e.g., In re Kaplan, No.
06-41771-JBR, 2006 WL 3757711, at *3 (Bankr. D. Mass. Dec. 19,
2006) (Rosenthal, J.) ("Property sold at foreclosure under a
power of sale in a mortgage terminates a mortgagor's right to
redeem the property."); In re Grassie, 293 B.R. 829, 831 (Bankr.
D. Mass. 2003) (Hillman, J.) ("The power of sale is a completed
sale that occurs upon the execution of the memorandum of sale.
The execution of the memorandum of sale terminates a debtor's
equity of redemption."); In re Dow, 250 B.R. 6, 8 (Bankr. D.
Mass. 2000) (Queenan, J.) (holding that "under Massachusetts law
redemption rights still exist until the execution of a
memorandum of sale following the bidding process"); id. ("My
colleagues in this district have come to the same conclusion in
cases where the memorandum of sale was executed prior to the
bankruptcy filing.").

More specifically, expressing agreement with the cases
surveyed above, it was held in at least one bankruptcy court

case that the contention of "a foreclosure sale being actually completed by delivery of a deed" was unmeritorious, as the sale was completed by the execution of a memorandum of sale.   In re Crichlow, 322 B.R. at 237.   This responds directly to Tran's contention that the equity of redemption is transferred "when the high bidder pays the consideration and the deed is delivered, and not before."   Appellant's Reply 2 (emphasis in original).

Tran unpersuasively cites to a case from this district in further aid of his contention concerning timing.   See Appellant's Surreply 1-2 (discussing Zagarella v. Caliber Home Loans, No. CV 18-12414-NMG, 2019 WL 3021261 (D. Mass. June 7, 2019) (Bowler, M.J.)).   Zagarella contains no holding or dictum that explicitly implicates the question of timing.   See Appellee's Resp. Suppl. Authority 1-2.   In fact, if anything, Zagarella references decisions by the courts of the Commonwealth that in turn have acknowledged that a mortgagor's equity of redemption extinguishes at the foreclosure auction sale when a memorandum of sale is executed.   See, e.g., Zagarella, 2019 WL 3021261, at *5 (referring to Housman, which, among other things, approvingly quotes Outpost Cafe and other decisions that have held that the equity of redemption extinguishes upon the execution of a memorandum of sale).

[21]

Finally, this Court also takes note that on the question of
timing, other sessions in this district, too, have uniformly
followed the courts of the Commonwealth.  See, e.g., Dickey v.
United States Bank Tr., N.A. as Tr. for LSF9 Master
Participation Tr., No. CV 19-12504-FDS, 2020 WL 4474273, at *5
(D. Mass. Aug. 3, 2020) (Saylor, C.J.), aff'd, No. 20-1866, 2021
WL 7627516 (1st Cir. Nov. 1, 2021) ("Furthermore, under
Massachusetts law, a mortgagor's equity of redemption is
extinguished at the time the foreclosure sale is concluded, not
when the deed is recorded."); Shaw v. Bank of America, NA, No.
10-CV-11021, 2015 WL 224666, at *10 (D. Mass. Jan. 15, 2015)
(Casper, J.) ("BOA is correct that the equity of redemption is
extinguished by the memorandum of sale.").  Moreover, one of the
sessions of this Court, like the observations made by the
Commonwealth's courts, described the rule as being "well-
settled."  Barbosa v. Wells Fargo Bank, N.A., No. CIV.A. 12-
12236-DJC, 2013 WL 4056180, at *9 (D. Mass. Aug. 13, 2013)
(Casper, J.) (quoting Housman, 80 Mass. App. Ct. at 220-21).

This Court therefore concludes it well-settled by both the
courts of the Commonwealth and in this district that in the
Commonwealth, a mortgagor's equity of redemption extinguishes
upon the execution of a memorandum of sale at the auction sale.
Tran's contentions to the contrary are rejected.

In the present appeal, as the record establishes, a

memorandum of sale -- stylized as such -- was executed on August
16, 2022, at 12:13 P.M.  See Answer to Compl. Filed by Herbert
Jacobs 12-17, Bankruptcy Docket No.15 ("Answer to Compl. Filed
by Herbert Jacobs").  Further, the memorandum of sale, signed by
both Citizens Bank and Jacobs, clearly describes the Property
and mentions the purchase price.  See id.  Tran, in his
submissions, has not alleged that the memorandum of sale is
defective.  See Bankruptcy Court Decision 2 ("The parties do not
dispute that Citizens conducted an auction of the Property at
which Jacobs was the high bidder and that a memorandum of sale .
. . was executed by Citizens and Jacobs before [Tran] filed his
petition.").

### 4.   Tran's Equity of Redemption Extinguished Upon the Execution of the Memorandum of Sale

As has been consistently and continuously interpreted by
the Commonwealth's courts, therefore, the memorandum of sale
that was duly executed on August 16, 2022, Material Facts ¶ 2,
and prior to Tran's petition for bankruptcy that was filed on
September 13, 2022, id. ¶ 6, extinguished Tran's equity of
redemption.

This Court therefore affirms the Bankruptcy Court Decision
holding that Tran's equity of redemption extinguished
prepetition.  See Bankruptcy Court Decision 4 ("It is settled
law that, when a foreclosure auction concludes with an accepted

[23]

bid and the execution of a memorandum of sale, a mortgagor's equity of redemption is extinguished"); id. at 5 (referring to Tran's equity of redemption as "an extinguished equity of redemption").

### C. The Bankruptcy Court Correctly Held That the Affidavit of Sale Provides Constructive Notice of the Foreclosure Auction Sale.

The second and related issue that arises in this appeal concerns the question whether Tran can avoid the transfer (extinguishment) of his equity of redemption.  Section 522(h) of the Bankruptcy Code grants debtors the possibility to avoid a transfer of their property -- in this case, their equity of redemption -- if "such transfer is avoidable by the trustee under section 544" and if "the trustee does not attempt to avoid such transfer."  11 U.S.C. § 522(h)(1)-(2); see also In re Piper, 291 B.R. 20, 23 (Bankr. D. Mass. 2003) (Kenner, J.) ("Section 522(h) of the Bankruptcy Code permits the debtor to exercise the trustee's avoidance powers under §§ 544(a) and 545 in certain circumstance: where, by exercise of the avoidance power, the debtor would recover an asset that he or she can claim as exempt.").  Section 544, as interpreted by the Supreme Court, "set[s] out circumstances under which a trustee can avoid unrecorded liens and conveyances." Merit Mgmt. Grp., LP v. FTI Consulting, Inc., 583 U.S. 366, 371 (2018).  One of those circumstances arises when a trustee may

avoid any obligation incurred by the debtor that is voidable by "a real or hypothetical bona fide purchaser, regardless of any actual knowledge of the obligation by the trustee." <u>United States Bank, N.A.</u> v. <u>Desmond</u> (<u>In re Mbazira</u>), 15 F.4th 106, 111 (1st Cir. 2021) (describing 11 U.S.C. § 544(a)(3)).[3]  "Thus, [under this section,] the trustee can only void a mortgage obligation if it did not have constructive notice of the encumbrance." <u>Id.</u>

The question before this Court is whether a good faith purchaser would have been put on constructive notice of the transfer (extinguishment) of Tran's equity of redemption to Citizens via the execution of the memorandum of sale.  If the question is answered in the affirmative, that is, if there is constructive notice, Tran, cloaked as a bona fide purchaser under Section 544(a)(3), cannot avoid the transfer; if answered in the negative, that is, in the absence of constructive notice, he can.  As explained in more detail below, this Court concludes that there is constructive notice in the present case, and consequently, that Tran cannot avoid the transfer

---

[3] Section 544(a)(3) is the specific "strong-arm" power Tran attempts to use to avoid the transfer of the equity of redemption.  The other two powers in 11 U.S.C. § 544(a)(1) and 11 U.S.C. § 544(a)(2), respectively, are not at issue here.  <u>See also</u> Bankruptcy Court Decision 5 (phrasing the legal question as whether "a trustee, cloaked with the status of a good faith purchaser under § 544(a)(3), [could] avoid the transfer of equitable title").

(extinguishment) of the equity of redemption.

Tran contends that the deed relating to the foreclosure auction sale is defective, Appellant's Br. 2, "flawed and void," and thus unable to give effect to the transfer of Tran's equity of redemption over the Property.  Appellant's Surreply 2. Tran's contention rests on his understanding that a defective deed lacking an acknowledgment, as he argues is the case here, cannot provide constructive notice.  See, e.g., Appellant's Br. 6.  He also asserts that Jacobs concedes the defective nature of the deed.  See, e.g., Appellant's Reply 2.  Jacobs, on the other hand, submits that there is no need to reach the issue of the allegedly defective deed.  See Appellee's Surreply 3 n.1.  This is because, Jacobs contends, the Affidavit of Sale that was recorded on September 8, 2022 (and thus prepetition), Appellant's Br. 2; Appellee's Br. 5, evidencing the execution of a memorandum of sale at the foreclosure auction, provided constructive notice to third parties that Tran's equity of redemption had extinguished.  See, e.g., Appellee's Br. 6, 10-11.  This Court agrees with Jacobs.

Without going into the details of the allegedly defective deed,[4] it is important to note that this Court already concluded

---

[4] The Bankruptcy Court did not reach the issue of the allegedly defective deed either.  See Bankruptcy Court Decision 5-6.  It did, however, note that "[a] foreclosure deed was also

above, see supra Section IV.B.4, that Tran's equity of redemption extinguished via the execution of a memorandum of sale at the conclusion of the foreclosure auction sale.  Thus, for Tran to successfully avoid the transfer (extinguishment) of his equity of redemption, he must persuade the Court that third parties were not put on notice of the conclusion of the auction sale.

This Court remains unpersuaded by Tran's focus on the deed, because, as the courts of the Commonwealth whose decisions were surveyed earlier in this opinion make abundantly clear, the prompt delivery of a non-defective deed is not the instrument or the process through which one's equity of redemption is extinguished.  Rather, it is the execution of a memorandum of sale that extinguishes said equity.  As such, for purposes of extinguishing a debtor's equity of redemption and ensuring that the debtor cannot avoid such extinguishment via Section 544(a)(3), it suffices that third parties are put on constructive notice of the due conclusion of a foreclosure auction and not of the deed.  See In re Mularski, 565 B.R. 203, 208 n.2 (Bankr. D. Mass. 2017) (Hoffman, J.) (noting that "prompt compliance" with the Commonwealth's requirement that an Affidavit of Sale be recorded in the registry of deeds following

---

recorded concurrently with the Affidavit of Sale that did not include the signature page."  Id. at 3.

a foreclosure sale "would put the world on notice that the foreclosure sale had been consummated, so that the failure to record the foreclosure deed itself might not present difficulties"); see also Bankruptcy Court Decision 5 (adopting the reasoning in In re Mularski);[5] Appellee's Br. 10 ("It was not necessary to record a foreclosure deed to provide constructive notice of the foreclosure sale because the foreclosure is complete at the time of the auction sale." (quotations and

---

[5] Tran takes issue with the Bankruptcy Court's reliance on In re Mularski by arguing that the latter's statement regarding an affidavit of sale sufficing for purposes of putting third parties on constructive notice as to the foreclosure sale is "speculative dicta." Appellant's Br. 7 (referring to In re Mularski's use of the word "[a]rguably," 565 B.R. at 208 n.2, as a preface to its observation that an affidavit of sale would put third parties on notice). There is nothing barring this Court from taking notice of the decisions of other courts, including those statements that are more appropriately categorized as dicta, in arriving at its own conclusion. Further, in In re Mularski, neither the affidavit of sale nor the foreclosure deed was recorded prepetition, 565 B.R. at 208 n.2 ("In this case, because none of the foreclosure documents were recorded before the filing of the bankruptcy petition, I need not decide what documents must be on record to perfect the transfer of an equity of redemption vis-à-vis third parties." (emphasis in original)). The present appeal is easily distinguishable from the fact pattern in that case, as both the deed, notwithstanding its alleged defects, and the Affidavit of Sale were recorded prepetition. Tran further points to In re Mularski's partial reliance on a case from a sister court in New York with a different mortgage foreclosure regime, id. (citing In re Cerrato, 504 B.R. 23, 33 (Bankr. E.D.N.Y. 2014)). See Appellant's Br. 6-7. Again, there is nothing barring courts, especially in the absence of relevant "Massachusetts decisional authority," In re Mularski, 565 B.R. at 207, from looking to decisions of other courts.

citations omitted)).

The recorded Affidavit of Sale, see Answer to Compl. Filed by Herbert Jacobs 9-10, does exactly that: it puts third parties on notice that the foreclosure auction, whose conclusion upon the execution of a memorandum of sale extinguished Tran's equity of redemption, indeed happened.  See, e.g., Chaves v. United States Bank, N.A., 335 F. Supp. 3d 100, 107 (D. Mass. 2018) (Wolf, J.) (holding that defendants' "recorded Affidavit of Sale establishes a prima facie case that they have complied with the statutory requirements for conducting a foreclosure by power of sale, including the notice requirements of § 14"); see also Fannie Mae v. Hendricks, 463 Mass. 635, 642 (2012) (holding that "where the Affidavit of Sale is in the statutory form or meets the particular requirements of § 15, a plaintiff has made a prima facie case").

To be sure, the Commonwealth's courts have held that all that a recorded affidavit of sale does is to make a prima facie, not conclusive, case of compliance with the Commonwealth's relevant notice requirements.  See, e.g., Fannie Mae, 463 Mass. at 641.  If and when such a prima facie case has been made, however, it is "incumbent" upon the mortgagor to "counter with his own affidavit or acceptable alternative[.]"  Chaves, 335 F. Supp. 3d at 107; Fannie Mae, 463 Mass. at 642.

In the present appeal, Tran has not contested the Affidavit

of Sale evidencing the conclusion of the foreclosure auction via a duly executed memorandum of sale.  Appellant's Reply 2 (asserting that Jacobs mistakenly "focusses [sic] on the Affidavit, which is simply wrong").  Having reviewed the Bankruptcy Docket, this Court observes that the Affidavit of Sale contains the seller and the purchaser's names and their signatures, correctly identifies the Property and the purchase price, is notarized, notes compliance with the requirement to publish notice of the sale in a local newspaper three times, and is accompanied by a note of general compliance with the Commonwealth's applicable notice requirements.  See Answer to Compl. Filed by Herbert Jacobs 9.  In the absence of any evidence proffered by Tran that the Affidavit of Sale is defective, the Court concludes that the affidavit's prepetition recording provided constructive notice to bona fide third parties.  See Chaves, 335 F. Supp. 3d at 107 ("Therefore, by submitting an Affidavit of Sale in the statutory form defendants have demonstrated prima facie compliance with the § 14 notice requirements.").  As such, Tran is unable to avoid the transfer of his equity of redemption.

In summary, it is settled that in the Commonwealth a mortgagor's equity of redemption extinguishes upon the execution of a memorandum of sale at the conclusion of a foreclosure auction sale.  The courts of the Commonwealth have further held

that an affidavit regarding such sale that complies with the
applicable statutory requirements is prima facie evidence that
such sale occurred, which puts third parties on notice that such
sale occurred.  Therefore, Tran can neither argue that he still
retains his equity of redemption on the Property nor that he is
able to avoid the transfer of such equity by contending that the
foreclosure deed contains defects.

## V.   CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the
Bankruptcy Court.  Bankruptcy Docket Nos. 38, 40, 44.


**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[6]

---

[6] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.